Good morning, and may it please the court. My name is Jennifer Merritt. I'm a Senior Assistant Attorney General with Arkansas Attorney General Leslie Rutledge, and I represent Colonel Bill Bryant, who is the Director of the Arkansas State Police and the appellant in this matter. I reserve three minutes for rebuttal. In this case, the District Court entered a broad statewide preliminary injunction prohibiting the Arkansas State Police from enforcing a narrowly tailored statute that prohibits loitering for the purpose of begging in three limited circumstances that amount to aggressive or dangerous panhandling. The District Court preliminarily enjoined any enforcement of the loitering statute, despite the lack of any evidence that either of the appellees suffered an actual or certainly impending injury from ASP's enforcement of this statute, or that they had an objectively reasonable fear of prosecution. On de novo review, this Court should vacate the preliminary injunction and dismiss this case for lack of standing. The P.I. should also be vacated because plaintiffs failed to make a strong, rigorous showing of likelihood of success on the merits. This statute does serve compelling governmental interests and public safety and is directed to conduct that's not prescribed by any other statute. At a minimum, the Court should narrow the scope of the injunction to only these two plaintiffs who did not bring the suit in a class capacity, and to only those specific sections of the statute that this Court finds they have standing to challenge. Counsel, I want to cut to the chase, and I know you have other arguments you want to make, but the problem I'm having with the State's argument, at least on the merits, is why focus on begging? What is the compelling interest? Why is the State, if they're worried about traffic, one of the prongs of the statute deals with traffic, if they're willing about, worried about people getting harassed going into a grocery store, why limit yourself to just a particular type of speech, which is begging? And I understand your concern on that, Judge Strauss, and certainly on the merits of course, this was a preliminary injunction proceeding, so it was an expedited proceeding, limited witnesses. But the record that was developed below does show that the State has some compelling public safety and traffic interests. I feel at least conceded that those safety interests are compelling governmental interests, and that's on page 170 of the appendix. The witnesses for the State did explain how aggressive or dangerous panhandling presented a unique but yet pervasive problem in Arkansas, whereas other forms of speech, such as political speech or commercial speech, simply do not exist on a similar scale or scope. We had Officer Hinman of the Little Rock Police Department, for example, who testified about the frequent complaints that the LRPD received with regard to panhandlers specifically, who walk into traffic, who stop cars to ask for money. He talked about the fact that that kind of behavior from people asking for charity or a gift presents a safety problem to the beggars themselves, to pedestrians, as well as to the motorists who are driving the cars. And these officers testify that this is a pervasive problem all around the State, that begging and panhandling in particular is more of a problem than, say, you know, say in front of a grocery store, somebody getting signatures to run for office or things like that. There's evidence that begging in particular is a very pervasive problem in Arkansas. Officer Hinman didn't talk about that. We did have Trooper Skarda of the Arkansas State Police. He talked about traffic impediments. And I'm sorry, Tim, if we're getting a little off my track, but I did have one of the witnesses for the State talked about how panhandling was a pervasive problem in certain areas. And I think when he said certain areas, he was referring to exit ramps, on and off ramps, to interstate highways, things of that nature. I don't know if he went so far as to say throughout the State, but that was, I think, a reasonable inference. Was there evidence outside of the traffic context that was given that justified the law or justified the problem? In other words, was there any evidence that, for example, people standing in front of grocery stores or drug stores or in strip malls or in whatever were also creating a problem in terms of harassing people who were walking by? Or was it just was the evidence just limited to the traffic, which is the one prong of the statute? Right. The plaintiffs didn't show a rigorous likelihood of success on the merits. They didn't fail to put on any evidence of any other problem. And, in fact, their own client, I believe it was Mr. Dillbeck, testified that he had never seen any political folks out there standing at signs. It wasn't – it's not the same scope of the problem. But before the Court can even get to this issue on the merits, of course, the threshold inquiry is standing. And so, you know, before we can get there, the Court has to first decide that these particular plaintiffs who, again, sued only on their own behalf and their individual capacities, have standing to bring this lawsuit. And the Court generally frowns upon facial pre-enforcement challenges to criminal statutes on First Amendment over-breath grounds. This Court talked about that in the Klobuchar case, and I quoted a U.S. Supreme Court case on that. They're especially to be discouraged, and that's because of the limited presentation of evidence and the risk that the Court is going to be relaxing Article III standing requirements, which are a minimum that's required by the U.S. Constitution. This Court and the lower court only has – Didn't the district court conclude that there was a problem with the chilling effect of the statute and its enforcement? And we have case law to the effect that if speech is significantly chilled, then standing is present. Judge Smith, yes, the district court did conclude that the statute's chilling effect is what conferred standing in this case. But I believe that was in error, because in the United Food case, this Court held that plaintiffs who engage in a course of conduct arguably affected with a constitutional interest, which is clearly prescribed by statute, may have standing to sue even absent a specific threat of enforcement. The appellee's peaceful panhandling in this case is not clearly prescribed by any statute. Quite to the contrary, and as evidenced by the lack of any enforcement of this statute against peaceful panhandlers, their begging activity just falls outside of the scope of this statute. But I thought Rogers testified that he had quit panhandling and had quit begging because of the statute and because of his fear that he would be arrested. Well, I guess I just don't understand why that doesn't, at least as to him, create standing. Mr. Rogers has been a longtime beggar. He lives in the Hot Springs area. He had been previously arrested and charged and even fined under an old statute. The old Arkansas law prohibited all forms of begging in all places under all circumstances. And despite being cited and charged five times, Mr. Rogers continued to beg. So he had no subjective chilling effect on his begging activity, even when he was operating under a much broader statute. This statute is quite different. Well, you're just saying then that what you're saying is the district court shouldn't have believed him. There was no credible threat. And in fact, the courts have made clear that in terms of standing, past enforcement action is not enough. The fact that allegedly injurious activity took place in the past does nothing to convey standing to seek prospective injunctive relief against the enforcement of — against future constitutional violations. That was — it's discussed in the Harmon v. City of Kansas City case. That was a First Amendment case. There must be a continuing present adverse effect from enforcement activity. And Mr. Rogers testified that he still continues to beg, even under the new statute. He lives outside — right outside of the city limits in Hot Springs. He testified that he does beg out in the country. He also testified that even under this new statute, he has gone out — he goes out regularly, weekly, to beg and has begged it within the city of Hot Springs. So it has been no subjective — But he begs differently, right? I mean, he begs — he says he spends more time out in the country, doesn't beg in the city limits quite as much. He also says when there's a threat of police being nearby, he drops his sign or hides his sign and — just so he doesn't get caught. Why? I mean, if he's changing his behavior, presumably that makes his begging less effective. If people don't see that he's begging, then presumably he's not getting any money. So why — I mean, combined with the fact that he's not begging as much, why doesn't — I guess I don't get the State's argument. Help me out here. Sure. It — it has to have a — the statute has to have a — a strong, substantial chill, an objectively reasonable chill, not a subjective fear of enforcement when his peaceful begging activity doesn't even fall under the scope of this particular statute. But isn't it reasonable because he was arrested in the past? I mean, I realize that was a different statute, but if I was arrested in the past, I'm fearing being arrested in the future. I'm changing my behavior. I don't know what else I need for standing. I don't know what — I mean — This — the new statute applies to only three very limited types of aggressive or dangerous panhandling, and the testimony was exhaustive that he does not engage — neither one of these plaintiffs engaged in any of that kind of conduct. A person is subject to a credible threat of arrest under the new statute if they beg in a harassing or threatening manner, if they beg in a way that's likely to cause alarm to another person, or if they beg under certain circumstances. What does that mean? What if I — what if I just don't like to see beggars? Does that cause alarm to me? If you — if you just don't like beggars? Yeah. Is — is — how — how do I know if I'm causing someone else to be alarmed? Right. Well, this statute exists — doesn't exist alone, right? I mean, there's a whole body of law in Arkansas, criminal law, that regulates similar conduct. There is a criminal harassment statute that has a different mens rea requirement, but it does define what harassing is, what cause alarm means. And so while Your Honor might be kind of hinting to the fact that the statute itself does not define what cause alarm means or what it means to harass, the courts can and do look to additional sources, such as dictionary definitions, judicial opinions, or related statutory definitions when considering whether a statute is void for vagueness. And in this case, we've — I don't want to spend my time, but we have discussed in the brief what the statutory — excuse me, what the dictionary definitions are. We also have the harassment statute at Arkansas Code, annotated 571208, that outlines a lot of different harassing conduct. And in this case, these plaintiffs actually affirmatively use the term harass in their complaint. They — everyone — persons of ordinary — ordinary understanding, they would know what the meaning of these terms are. So it's not void for vagueness. The court, lower court below, did not reach that issue, and so the court certainly on remand could reach that issue. But there is evidence in the record from which this Court should conclude that the statute is not void for vagueness. And in fact, in Gresham v. Peterson, the Second — Seventh Circuit, excuse me, held that a similar ordinance was not vague in defining aggressive panhandling. That's at 225 Fed Third 899. I'm getting close to getting into my rebuttal time. I do want to spend a moment, if I could, talking about the overbreadth of this particular injunction. The district court entered a broad statewide injunction, despite the fact that this is not a class action. And this is really becoming a hot-button issue on Federal courts across the country in terms of overbroad injunctions. The judicial power of the courts, of course, are limited to cases or controversies. Injunctive relief has to be appropriately tailored to preserving the rights of the plaintiffs that are before the court. Because the purpose is to maintain the status quo during the pendency of the case and pending any final determination on whether or not the statute is actually unconstitutional or not. Scalia. Counsel, since the statute in question is a statewide statute — I'm sorry, Judge. The statute in question or the law in question is a statewide statute. The statute doesn't — Why shouldn't the injunction be coextensive with the law? The injunction is to preserve the status quo of the parties, Your Honor. And this case only involves two individual plaintiffs. And we've got the Califano case, the Holland case, and the Zepeda case, where the courts have explained that broad injunctions are not appropriate in the absence of a class action. That's why Congress set up a class action procedure to pursue those kinds of claims. The plaintiffs here chose not to file this as a class action, and so the injunction cannot be any more burdensome to the defendant than is necessary to provide complete relief to these plaintiffs. This injunction is overbroad. It applies to everyone in Arkansas. And in the district court, didn't properly exercise its discretion in that regard because it didn't even attempt to analyze or explain why a broad injunction was necessary or appropriate at this stage of the proceedings. The court just said, I decline to limit the injunction. And so we contend that that is not an appropriate exercise of the — of the discretion as it should be limited in this kind of case. Counsel, did you actually ask the judge to limit the injunction? I mean, did you expressly say, why don't we just limit it to these parties? And the judge says, no, I'm doing it statewide. Yes, we did. And he just simply declined. And I will reserve the rest of my time for rebuttal. Thank you, Ms. Merritt. Ms. Stephens. May it please the Court and counsel, my name is Catherine Stephens, and I'm here today representing the appellees. I'm honored to be here today. This is actually my first time arguing in appellate court, so thank you for the opportunity. The Court should affirm the district court's preliminary injunction barring enforcement of this unconstitutional statute. I'll first focus on standing. The appellants have focused on the injury and fact requirement, so I will as well. With constitutional facial challenges, there are special rules of standing. Plaintiffs can show an injury in fact by showing that the very existence of the statute itself has had a chilling effect on their First Amendment-protected activities. That chilling effect passes muster if they can show that they have an objectively reasonable fear of prosecution under the statute. And that's clearly the case here. I'll focus on the chilling effect first. Mr. Doback has regularly begged in Arkansas for decades. After the passage of the statute, he has completely stopped begging in Arkansas out of a fear of prosecution. But for the existence of the statute, he would continue to beg in Arkansas, so he has been chilled. Mr. Rogers, while he has not completely stopped begging in Arkansas, has significantly limited his activities. He avoids high-traffic areas. He avoids popular times of day. He hides signs. In general, he censors himself out of a fear. And that's exactly similar to the plaintiffs in the Thayer case. None of them stopped begging either. They just avoided holding signs in traffic medians, and they had standing in that case. So both have been chilled. Their fear of enforcement is reasonable here. United Commercial and Food Workers has stated that past experience is relevant to determining whether their fear is reasonable. They have both been constantly cited, threatened with arrest, arrested in one case, warned and run off by cops under prior versions of the statute. So of course that past experience is relevant to showing that they have a fear of being prosecuted under just the latest version of the statute. They also both testified, they both hold signs near busy streets, that's how they beg. And they both testified that when a driver waves them over, they will approach a vehicle. And they also testified that traffic will sometimes temporarily slow down or stop based on their activities. So clearly it's reasonable that they fear being seen as a traffic hazard or impediment. What does that do to the merits, though? I mean, they're essentially what you heard me ask opposing counsel about, well, why is panhandling and begging present a special problem? And sort of by proving standing here, you may have made their case for them, which is to say that the problems with traffic may be unique to panhandling and that your client saying that traffic slows down may in fact show what the problem is. What's your response to that? Well, if we get into the merits of the case, you know, causing traffic to slow down, when there's a ton of other laws on the books that already address those issues. There's a solicitation on a highway, there's impeding traffic, there's minimum speed regulations. So why isn't better enforcement of those laws enough to already address any hypothetical traffic safety issue? Well, and I would say, so what? I mean, because your clients have proven or at least said in establishing standing, this is one of the ironies, I think, of this case, that, well, begging may present a special problem that may require a special set of rules that specifically focus on that problem and are proven slightly differently than all of those other laws. Well, I cannot remember the name of the case specifically right now, but I could supplement it to the Court. But facial challenges are unique, where even if the specific activity that what they're doing might not be protected under a law, that they still can represent other parties if they have, if they meet these standing requirements. So the fact that sometimes if they go into traffic to approach a vehicle, you know, that might be a traffic safety issue, that doesn't mean that they don't have standing here to bring this case and show that why does this statute in particular, you know, the government has the burden to show that. They need to show traffic reports, accident reports, call-ins, any type of evidence that shows that this is actually a widespread issue. Well, and that's what I'm struggling with, and maybe you can help me out with this. I'm struggling with the justifications here. I mean, there needs to be, I understand, look, holding up traffic and causing accidents, the State has a compelling interest, no question about it. But what I'm trying to do is make the causal link between begging and panhandling and these accidents. And I'm not sure that the government has done that, and the government's response is, well, we had all these officers come in, in addition to your clients who talked about the problems they're creating, and that's good enough. What's your client's response to that? Well, first of all, none of those testimonies are relevant, because none of those are actually considering passing the statute. And McLaughlin clearly holds that after-the-fact rationalizations about public safety or traffic safety, that doesn't hold muster when they have a strict scrutiny burden here. Their burden is so high that this statute is presumptively unconstitutional. So bringing in a few witnesses to state that, yes, sometimes when I'm, you know, specifically in Little Rock, one of them's a Little Rock police officer, there's this issue. Well, that does not, that doesn't raise anywhere close to meeting their burden. What if they, what if they came in with statistical evidence that showed last year in Arkansas, there were a thousand car accidents and a thousand deaths caused by panhandling, that they could be linked to panhandling, people rear-ended each other, whatever, on the street? Would that be enough? That might be enough to show compelling government interest, if that was presented to the legislature at that time, and say, listen, we have a really serious issue here. But they also need to show that it's narrowly tailored, which they didn't even address that in their brief. Again, why aren't current statutes that are already in effect already, why isn't better enforcement of those statutes that don't abridge someone's First Amendment rights by specifically targeting panhandlers, why aren't those enough? They haven't shown any evidence that, listen, we've been trying to enforce obstruction of highway, solicitation, all these things, and it's just not working. And so we really need to make this, this statute specific to begging. They haven't provided any of that evidence here. And they need to show that this statute is the least restrictive means. In other words, that they've tried less restrictive ways of dealing with these issues, and it's failed. Kennedy. Is there any evidence in the record of other activity that causes problems? You've, they've, in other words, is there any evidence that people holding political signs impede traffic, or any evidence? And in my hometown, we have one particular area, they have people dress up in crazy costumes and advertise tax preparation services and mattress sales and everything else under the sun as you go by on a busy street. Is there any evidence about what that kind of conduct? Well, there wasn't a lot of evidence about that. There was some discussion in the testimony. But again, the burden is on them to show there wasn't any evidence that there's any issues with begging either. So just because we didn't get into the kind of the real... Well, I thought the evidence of begging was that your own clients say when they walk out in the street to get the money, as I understand your client's testimony was, we don't stand in the street, we don't impede traffic except when somebody stops to offer us money. But then when we get them, when we step out to get the money, by definition, they're stopping, they may be impeding traffic. I mean, there's that evidence, right? Right. But that's definitely not enough under a strict scrutiny burden to show that they should apply this ban to every single public street, sidewalk, right-of-way, parking lot. I cannot think of where this doesn't apply. So if there are some issues at maybe some busy intersections, again, they have to show that through accident reports. And you can see that in other cases where the government has provided so much more evidence and still failed to meet their burden. There was one where they had had 1,800 calls in a year about aggressive panhandling. Where is that evidence here? It's just not here. They also haven't shown why – well, actually, we kind of already addressed that, so I'll move on to the next point. Alternatively, it's void for vagueness because I don't think it gives fair notice to someone of ordinary intelligence that their conduct is criminal. Especially in the context of begging, it's a really blurry line between what can cause someone alarm or make them feel threatened in a way that would be criminal under the statute versus uncomfortable or offended or even kind of coerced into giving someone money. People are alarmed by vagueness. Shouldn't there be at least an assumption that that's – that there's a reasonableness requirement to that? Statutes that prohibit assault have similar language that requires there to be at least some reasonableness to the alarm that someone feels. It's not entirely subjective. So isn't that a qualifier here? Well, so I think that when it comes to alarm, I'm really unclear – they don't really give a lot of follow-up definitions or specific instances in which you can really figure out what that means. Well, it says likely to cause alarm to another person, which would seem to bring into it a reasonableness standard that if you may have an unusual person who is easily alarmed, but that person wouldn't be likely. You wouldn't consider that someone – you wouldn't consider that likely. So if you get into the reasonableness discussion, there's case law that shows that I think it's reasonable to be alarmed in a situation where, for example, someone who's begging is following you or repeating several times their request for money. And there's – I think it's McLaughlin or I can't remember, or Thayer, McLaughlin or Thayer, that shows that that's actually not a threat to public safety. That makes someone feel really uncomfortable and maybe even a little scared in certain  But that doesn't raise the – It could be if they're operating a motor vehicle. I'm sorry? It potentially could be if they're operating a motor vehicle. Yes. I just don't think that they give enough clarity in the statute itself, which is – it's a heightened scrutiny when it involves an abridging of First Amendment rights. They need to clarify exactly what it means when someone's likely to cause alarm, because I think there's confusion about that here. And additionally, they're also – Creating a hazard, traffic hazard or impediment, that's fairly concrete, isn't it? That's not particularly vague. Well, they're arguing that there's no mens rea requirement for that. So I actually don't think it's pretty concrete, because under Stahl, they said that that – how is someone supposed to know if what they're doing is going to cause traffic to slow down or stop enough where it constitutes a crime? It's completely dependent on the reaction of third parties. And therefore, we would think that this is void for vagueness. Yeah, but if you walk out into the middle of the street with a line of cars, I mean, you've got to – you've got to be aware of this route. That situation is clear. I mean, yeah. I mean, maybe if there's nobody around and you're in a neighborhood and there's one car there, then maybe it's – you don't know. But it seems to me that you're going to know it in at least some situations what's likely to cause a traffic hazard. I think that's true. So finally, I just want to go to the argument of the injunction, the breadth of the injunction. The district court did not abuse its discretion in barring enforcement of this statute. Again, it's an abusive discretion standard. And the case that is exactly on point here is Planet Aid. In that case, the district court found that the plaintiffs were likely to succeed on the merits on their First Amendment facial challenge. They barred enforcement of the city ordinance full stop. The Sixth Circuit upheld that preliminary injunction. And I ask that the Eighth Circuit do that here today. The cases involving class certification and non-mutual collateral estoppel, they seem to be arguing that facial challenges just shouldn't exist in lieu of those options. And that's simply not the case. Patel has said a facial challenge can move forward, and that's what we have here. So the class certification cases and all those other – they're not relevant here. Well, I think their argument is slightly different. As I understand it, you allow overbreadth challenges, but we decide cases are controversy. And the case for controversy is these two people, these two individuals you're representing, want to panhandle. They don't want to be restricted by this statute. So you decide that particular case. You don't decide what two panhandlers clear across the State in Arkansas might have, you know, if they have a problem with the statute. They may not even have standing. Who knows? And so you don't enjoin it State-wide. You just enter an injunction. You solve the problem as between those two parties or three parties in this particular case. What's your response to that? Well, this is a special circumstance because it is a facial challenge. So it's not an attack on the statute in a particular application. It's an attack on the statute itself on its face. And so as Planet Aid showed, in all the cases involving facial challenges, while they were at different stages, the proper remedy for that is barring enforcement of the statute. It's unconstitutional on its face. Does it make a difference if this is a preliminary injunction? I could see your argument if it was a permanent injunction and all the evidence had been taken, the district court made a decision. But right now, the district court doesn't even know for sure. It's likely to succeed on the merits. It's making a guess. It's best guess as to what might happen. And you're asking – you're basically enjoining the enforcement of a criminal statute for the entire State based on an educated guess. Does that make it any different? Well, I think case law supports that that is – that that is acceptable here in the proper remedy. So in Planet Aid and even in the case that they cited in their letter, while that case did limit the nationwide injunction, it limited it to a statewide injunction. So clearly, case law supports that a statewide preliminary injunction is sometimes necessary to achieve relief. And we would argue that that's the case here. So in conclusion, we ask that this Court affirm the district court's preliminary injunction, and I thank you for your time today. Thank you, Ms. Stevens. Ms. Merritt, your rebuttal. Thank you, Judge Smith. A few quick points. Injury for the purpose of standing is an objective test. It is not a subjective test. The court should not look at whether these plaintiffs were subjectively chilled in their conduct. What's at issue here is whether there's an objectively reasonable chill. There was no credible threat of enforcement in this case. Trooper Scarta of the Arkansas State Police testified that the ASP's enforcement activity has been limited to one single circumstance that was incredibly dangerous when a person was standing on the side of Interstate 430 in Little Rock and flagging and waving down traffic and physically impeding traffic by stepping into the lane. That was a very extremely dangerous situation, and that is the sole time that the ASP has even cited anyone for violation of this particular statute. Counsel, I want to ask you before your time expires about Stahl. You heard opposing counsel mention it, Stahl being the case dealing with impeding traffic. Why isn't it controlling here? Why doesn't it make that third ground, the capital C in the statute, why doesn't it make it void for vagueness? The decision or, excuse me, the testimony in this case from Trooper Scarta was that a panhandler does not impede traffic when he's standing on the sidewalk or the median or the shoulder because he's not stepping into traffic. The panhandler with the sign cannot control the driver of the vehicle. The law enforcement officer can cite the driver of the vehicle if the driver of the vehicle slows or stops or impedes traffic in order to hand money to a panhandler. It's not the panhandler's activity. So how does that distinguish it from Stahl, what you just said? That's what I'm trying to get at. Well, the district court here has to base its determination based on the evidence that was presented by the parties. And in this case, the testimony was that the ASP does not enforce this statute and could not enforce this statute against a panhandler who's holding a sign on the road. The proper target of that law enforcement activity would be the driver of the vehicle, not the panhandler, and that's the evidence that was put on in this case. So that's what the court is limited to looking at. Is that what the officer's testified to, though? I understand Officer Carter said any distraction that takes the driver's eyes off the road is an impediment to traffic, including the panhandler who's holding a sign and doing what you said they would never enforce. He says that is an impediment. He testified, as I recall the testimony in Judge Molloy, was that a panhandler holding a sign could be a distraction, but the statute does not utilize distractions. No, he said, did he say impediment, which is the word of the statute? I wrote down in my notes he said it would be a distraction, but there was no testimony that these plaintiffs actually impeded traffic, that they ever stepped into the lane or created a traffic hazard, or that they begged in a harassing way or in a way that's likely to cause harm. So in the event that any of the statute, perhaps if the court were to find that it's overbroad or void for vagueness, which, of course, the district court didn't consider, but the court should limit the injunctive relief and only enjoin enforcement of those specific provisions of the statute. Thank you, Mrs. Merritt. The Court wishes to thank both counsel for the argument you provided to the Court this morning and for the briefing which you've submitted in this case. We will take it under advisement and render a decision as promptly as possible.